UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **COVENANT MEDICAL CENTER, INC.**, | **2:21-CV-11221-TGB-DRG** |
| Plaintiff, | |
| vs. | **ORDER RESOLVING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| **ANNE BAGLEY,** | |
| Defendant. | |

Due to an error in its payroll system, Plaintiff Covenant Medical Center overpaid one of its physicians, Defendant Anne Bagley, D.O., $255,293 over the span of approximately two years. Covenant sought immediate recovery from Dr. Bagley once it discovered the error in late 2020, but Dr. Bagley has failed to repay any sum to Covenant. Covenant now brings an unjust enrichment claim against Dr. Bagley, arguing that Dr. Bagley owes Covenant $255,293. Dr. Bagley counters that the Pay Discrepancy Acknowledgement Form, which she signed during onboarding, limits Covenant's recovery to six months and bars Covenant from bringing an unjust enrichment claim. For the following reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 11) and **DENIES** Defendant's Motion for Summary Judgment (ECF No. 12).

1

# I.   BACKGROUND

Dr. Bagley was a *locum tenes* physician (a physician who fills in when another physician is absent) for Covenant for four months, after which Covenant offered her permanent employment as an Intensivist in the Intensive Care Unit. ECF No. 11-2, PageID.123-24. On August 31, 2018, Covenant and Dr. Bagley entered into an Employment Agreement, effective October 1, 2018. ECF. No. 11-3, PageID.162, 166. Under the terms of the Employment Agreement, Dr. Bagley agreed to be paid $2,580 per shift and work 126 twelve-hour shifts per year. ECF No. 11-3, PageID.168, 163. This comes to a full salary of $325,080 per year (126 shifts times $2,580 per shift).

Paychecks at Covenant are calculated as follows. The total number of possible work-hours in one year, assuming standard hours, is 2,080 (40 hours per week, times 52 weeks). Covenant determines physicians' biweekly pay rate by dividing the total salary (here, $325,080) by 2,080 (the total number of work hours in a year) to come up with an hourly rate (approximately $156 per hour for Dr. Bagley), multiplying this by 80 hours to provide a bi-weekly pay (approximately $12,503.07). While this "hourly" rate is in some ways divorced from the actual number of hours Dr. Bagley is expected to work or does in fact work, the goal of the calculation method is to arrive at the pre-determined salary of $325,080 through equal payments in biweekly increments. Arndt Dep. 17:7-19, ECF No. 11-8, PageID.245.

2

Shortly after Dr. Bagley signed the Employment Agreement, Manager of Inpatient Practices Greta Arndt ("Arndt") sent Dr. Bagley the Pay Acknowledgment Discrepancy Form ("Discrepancy Form") as part of a series of documents to fill out for the human resources department. ECF No. 11-8, PageID.244. Dr. Bagley signed the Discrepancy Form on September 30, 2018, and Arndt wrote her name below Dr. Bagley's signature above the "Manager" line. ECF No. 12-6, PageID.421. The Discrepancy Form provides that "[a]ny confirmed errors in pay (either an underpayment or overpayment) will be corrected going back for a maximum time period of six (6) months in accordance with the Department of Labor, Wage & Hour Division." *Id.*

Beginning in Fall 2018, before Covenant's first payment to Dr. Bagley, Covenant entered an incorrect version of Dr. Bagley's per shift salary in its payroll system by typing in $215 as her hourly rate. ECF No. 11-7, PageID.224. As a result, Covenant overpaid Dr. Bagley $39,173 in 2018, $178,160 in 2019, and $37,960 in 2020, totaling $255,293 over approximately two years. ECF No. 13-6, PageID.644. In late December 2020, Covenant discovered the payroll error. ECF No. 11-7, PageID.225. Director of Inpatient Practices Jamie Furbush informed Dr. Bagley about the overpayment via telephone call and email. *Id.* Furbush told Dr. Bagley that she had to repay the amount in full immediately. *Id.* On December 31, 2020, Dr. Bagley responded in an email with, "I do want to emphasize once again that it will be critical for Covenant to suggest a

3

framework by which I can repay the overage. Hopefully we can accomplish this in the near term." ECF No. 12-6, PageID.644.

Dr. Bagley has not repaid any sum to Covenant. ECF No. 11, PageID.112. Dr. Bagley resigned from Covenant effective May 15, 2021. *Id.* Plaintiff brought this lawsuit alleging one count of unjust enrichment. ECF No. 1-1, PagID.40-41. Covenant alleges that it would be inequitable for Dr. Bagley to retain the $255,293 and demands a judgment against her in this amount. *Id.*

Now before the Court are the parties' cross motions for summary judgment. Plaintiff argues that it is entitled to summary judgment in its favor on its unjust enrichment claim because there was a mutual mistake, and because no consideration was received for the overpayment. ECF No.11, PageID.114-15. Defendant argues that she is entitled to summary judgment denying the unjust enrichment claim based on her interpretation of the Discrepancy Form as a contract covering the subject matter of an overpayment. ECF No. 12, PageID.312. She believes the Discrepancy Form limits the recovery of both parties as well as the remedies in the event of an overpayment. ECF No. 14, PageID.741.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under

the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587 (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

# III.    ANALYSIS

## A. Unjust enrichment claim

The Court must first determine whether Covenant has demonstrated the elements of an unjust enrichment claim. Covenant argues that it can bring an unjust enrichment claim because the overpayment occurred due to a mutual mistake, and Dr. Bagley provided no consideration for the overpayment. ECF No. 11, PageID.114-15.

Under Michigan law, an unjust enrichment claim has two elements: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant. *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. App. 1993). Where an overpayment was made due to a mutual mistake of existing material fact in an employment or business contract, and no consideration was received for the overpayment, the payer is entitled to recover the amount overpaid. *General Motors Corp. v. Enterprise Heat & Power Co.*, 86 N.W.2d 257, 260 (Mich. 1957) (quoting *Pingree v. Mutual Gas Co.*, 65 N.W. 6, 8 (Mich. 1895). The payer's negligence does not prevent his right to recovery, so long as the payment has not caused "such a change in position of the payee that it would be unjust to require a refund." *Id.* (quoting *Smith v. Rubel*, 13 P.2d 1078, 1079 (Or. 1932)).

### 1. Receipt of a benefit and inequity

The first two elements of an unjust enrichment claim are easily met here. First, Dr. Bagley received a benefit from Covenant because

Covenant paid her an additional $255,293 beyond the amount that she earned. Second, Covenant experienced an inequity due to Dr. Bagley's retention of the $255,293 because it paid more than the agreed upon amount in the Employment Agreement. Covenant also points out that it has suffered an even harsher inequity due to the overpayment because it is a tax-exempt organization that must adhere to strict compensation requirements, and its failure to receive a refund from Dr. Bagley puts its tax-exempt status at risk. ECF No. 11, PageID.116. Defendant does not seem to dispute that these elements are met. *See* ECF No. 12, PageID.311.

### 2. Mutual mistake

Courts have held that a party can bring an unjust enrichment claim when the overpayment occurred due to a mutual mistake and lack of consideration. In *General Motors*, General Motors entered a contract with Enterprise to install an underground fuel network. *Id.* at 258. The parties subsequently entered into several alteration agreements whereby the contract price was modified. *Id.* The modified price was higher than the actual price, which resulted in General Motors overpaying Enterprise $9,465. *Id.* The court held that the overpayment was a result of a mutual mistake because neither party arrived at an accurate price revision. *Id.* at 260. Moreover, General Motors did not receive consideration for any excess payment because the services rendered were what had been agreed upon originally. *Id.*

7

Here, the record shows that the overpayment occurred due to a mutual mistake. Just as neither party arrived at the accurate price revision in *General Motors*, neither party arrived at the accurate biweekly pay rate here. According to Covenant's calculations, Dr. Bagley's hourly rate should have been $156.28. However, Covenant's payroll system entered the hourly rate as $215,[1] resulting in a mistake on Plaintiff's end. ECF No. 11, PageID.110. Dr. Bagley also testified that she did not compare the amount that she was to be paid under the Employment Agreement to the amount on her W-2 forms until after Furbush brought the overpayment to her attention. Bagley Dep. 34:13-21, ECF No. 11-2, PageID.130. Dr. Bagley's failure to notice the error indicates a mistake on her end as well.

### 3. Negligence and change in position defenses

Finally, neither negligence nor a change in position bar Covenant's unjust enrichment claim. While Covenant concedes that it failed to notice

---

[1] Although the record is silent as to how this hourly rate was arrived at, it appears this number was calculated by taking the number of shifts Dr. Bagley was expected to work (126) times 12 hours per shift to arrive at a total number of work hours of 1,512 each year, and then dividing the total yearly salary by work hours ($325,080 divided by 1,512) to reach $215/hour. As previously noted, the problem with this calculation is it attempts to estimate the number of hours *actually* worked per week by Dr. Bagley by assuming 12-hour shifts, coming out to about 29 hours per week. But the payroll system calculates biweekly paychecks assuming 40 hours of work per week, making the $215 figure too high and causing the total payments to Dr. Bagley to overshoot the pre-determined salary.

the error until late 2020, its negligence does not interfere with its right to recovery. *See General Motors*, 86 N.W.2d at 260.

And Dr. Bagley's position has not changed such that it would be unjust to require a refund. The record contains no evidence to suggest that Dr. Bagley is financially unable to repay the overpayment, nor has Dr. Bagley demonstrated that any other circumstances in her life have changed as to render her unable to repay the overpayment.

Therefore, Covenant has successfully demonstrated the elements of an unjust enrichment claim, and that it can make a full recovery based on the presence of a mutual mistake.

## B. Existence of a contract

Although Covenant has shown the elements of an unjust enrichment claim, the Court must consider the potential existence of any contract governing this issue. When courts recognize unjust enrichment claims, they necessarily acknowledge an implied contract. But a contract can only be implied in law to prevent unjust enrichment when there is no express contract covering the same subject matter. *Barber*, 509 N.W.2d at 796. Therefore, if there is a contract binding Covenant and Dr. Bagley covering the subject of overpayments, Covenant is barred from bringing an unjust enrichment claim related to that same issue. *See id.*

### a. Employment Agreement

Covenant contends that it can bring an unjust enrichment claim because the Employment Agreement does not address Covenant's

procedure for handling overpayments; therefore, though it is a contract, because it does not cover the subject of this claim it does not bar recovery under an unjust enrichment theory. ECF No. 13, PageID.498.

Courts routinely find that employment contracts discussing the issue of overpayment bar unjust enrichment claims. In *In re Promedco v. Las Cruces, Inc.*, the court dismissed Promedco's unjust enrichment claim because the Employment Agreement expressly addressed the process to be followed in the event of an overpayment. 00-46863-BJH-11, 2003 WL 21962443, at *10-11 (N.D. Tex. Aug. 12, 2003). There, the defendant doctor's Employment Agreement provided that her compensation was subject to reconciliation as outlined in a separate Service Agreement. *Id.* at *1. Per the Service Agreement, reconciliation was to be performed quarterly. *Id.* at *2. Promedco brought an unjust enrichment claim after the reconciliation period had passed, alleging that Dr. Humphrey received an overpayment of approximately $455,000. *Id. a*t *9. The court barred Promedco's unjust enrichment claim, finding that Promedco was "attempting to use a claim of unjust enrichment to unilaterally modify the contracts." *Id.* at *12. *See also Shahbabian v. TriHealth, Inc.,* 1:18-CV-790, 2021 WL 3110073, at *14 (S.D. Ohio July 22, 2021) (barring TriHealth's unjust enrichment claim because the Employment Agreement required TriHealth to perform a reconciliation, and the plaintiff doctor to repay any overpayment at that time only).

But importantly, these courts dismissed unjust enrichment claims because the original employment agreement between the parties contained language governing overpayments. Here, the Employment Agreement between Covenant and Dr. Bagley contains no provision concerning overpayments or underpayments. The "Total Compensation" provision in Dr. Bagley's Employment Agreement provides that Dr. Bagley's compensation may not exceed reasonable levels of compensation for similar physicians nor may her pay exceed the ninetieth percentile of compensation for pulmonology/critical care. ECF No. 11-3, PageID.169. Though this provision references Dr. Bagley's compensation, it fails to provide any guidance regarding Covenant's protocol for resolving overpayments nor does any other provision in the contract. *Cf. Shahbabian*, 2021 WL 3110073, at *14 (holding that Dr. Shahbabian had a "contractual duty" to repay any overpayment according to his Employment Agreement).

Thus, the Employment Agreement does not bar Covenant from bringing an unjust enrichment claim compelling Dr. Bagley to repay the $255,293.[2]

---

[2] The Court notes that Dr. Bagley appears to concede this point, at least to the extent she admits that the Employment Agreement "is silent as to what happens in the event of an overpayment" and declines to further address the Employment Agreement in her Response. ¶ 7, ECF No. 14, PageID.738.

### b. Pay Discrepancy Acknowledgement Form

But Dr. Bagley argues that a document she signed as part of her onboarding process, the Pay Discrepancy Acknowledgement Form, is a separate contract that does address the issue of overpayments. ECF No. 12, PageID.312. Covenant responds that the Discrepancy Form is not a contract, but rather a human resources policy document: it says the Form lacks definite terms regarding the employment relationship between Dr. Bagley and Covenant, was signed after the effective date of her employment, and involved no consideration. ECF No.13, PageID.498.

"Under Michigan law, a binding contract requires an offer, acceptance, consideration, and a '"meeting of the minds on all essential terms."' *Helmus v. Chase Home Fin., LLC*, 890 F. Supp. 2d 806, 814 (W.D. Mich. 2012) (quoting *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006). Thus, the Discrepancy Form would be a binding contract between Covenant and Dr. Bagley if there was an offer, acceptance, consideration, and a meeting of the minds. *See Steep v. Harpham*, 217 N.W. 787, 789 (Mich. 1928) (demonstrating that a binding contract must have consideration); *see also Kamalnath v. Mercy Mem. Hosp. Corp.*, 487 N.W.2d 499, 503 (1992) (holding that contracts require a meeting of the minds on all '"essential terms"').

### i. The form's language and meaning

The Pay Discrepancy Acknowledgement Form is a one-page document consisting of three paragraphs. Its title and format suggests

that it is not intended to be a contract. It is not called a contract, but rather an "acknowledgment form". It is not signed by the same Covenant officer who signed Plaintiff's employment agreement, and it does not clearly delineate obligations of the parties. Given its brevity, its entire content can be easily reproduced:

> I acknowledge and will adhere to the following policy and procedure for reporting pay discrepancies under Policy 308-Pay Periods, Pay Checks and Pay System Information:
>
> It is an employee's responsibility to review pay checks on a bi-weekly basis. If an employee believes an error has been made in their pay (either an underpayment or overpayment), the employee must immediately report this to their supervisor. Failure to promptly notify leadership of an overpayment may result in disciplinary action, up to and including termination for theft. Upon confirmation of the error, the supervisor should provide updated information to the Human Resources Consultant.
>
> Any confirmed errors in pay (either an underpayment or overpayment) will be corrected going back for a maximum time period of six (6) months in accordance with the Department of Labor, Wage & Hour Division. For underpayments correction will be paid on the next scheduled payroll cycle. For overpayments corrections will be deducted on a payment schedule beginning on the next scheduled payroll cycle.

ECF No. 12-6. The Form contains two lines for "Name" and "Signature" where Dr. Bagley printed and then signed her name, and provided her Employee Number and the date. The Form also has a line with the title "Manager," and the name "Greta Arndt" is printed on this line. *See id.*

13

Consistent with its title, the Form memorializes the acknowledgement of Dr. Bagley of Covenant's payroll policies pertaining to her obligation to report any pay discrepancies and to review pay checks on a bi-weekly basis and immediately report any discrepancies in her paycheck to her supervisor. The Form notifies the new employee that any failure to report an overpayment could result in disciplinary action, or even "termination for theft." It is the last paragraph that Dr. Bagley relies upon as creating a 6-month limitation on the time frame for which Covenant could collect for any overpayment.

The pertinent part of that last paragraph provides: "Any confirmed errors in pay (either an underpayment or overpayment) will be corrected going back for a maximum time period of six (6) months in accordance with the Department of Labor Wage & Hour Division." There are several problems with Defendant's position that this clause represents a binding contract. First, the clause is clearly referring to a process for payroll deductions—it speaks of underpayments being paid in the "next scheduled payroll cycle" and the overpayment corrections being "deducted on a payment schedule beginning on the next scheduled payroll cycle." Second, the clause does not by its terms impose a blanket six-month limit on collecting overpayments—it says that such overpayments will be corrected going back six months "in accordance with the Department of Labor Wage & Hour Division."

14

Both Parties agree that this reference is to a Michigan statute
enforced by the Michigan Department of Labor, Wage & Hour Division
titled "Deductions from Wages," which states that:

> Within 6 months after making an overpayment of wages or
> fringe benefits that are paid directly to an employee, an
> employer may deduct the overpayment from the employee's
> regularly scheduled wage payment without the written
> consent of the employee if all of the following conditions are
> met [.] . . .

MCL 408.477(4). The referenced statute, MCL 408.477, generally
prohibits employers from taking deductions from employee wages
without the employee's written consent. There is a carefully limited
exception, MCL 408.477(4), that authorizes an employer to deduct any
overpayments from an employee's regularly scheduled wage payment
without written consent if the overpayment occurred within the last six
months and if a host of conditions are met, such as "The employer
provides the employee with a written explanation of the deduction at
least 1 pay period before the wage payment affected by the deduction is
made" and "The deduction is not greater than 15% of the gross wages
earned in the pay period in which the deduction is made." MCL §
408.477(4)(c) and (d).

In sum, this statute sets out the requirements governing when an
employer can make deductions from an employee's paycheck in order to
recover overpayments, and also clarifies that, to use that particular
process of recovery without the employee's written consent, the

overpayment must be no more than six months old, and the other conditions of the statute must be met. It does not appear to regulate the recovery of overpayments or underpayments generally. *See Rave's Const. and Demolition, Inc. v. Merrill*, 323908, 2016 WL 105451, at *3 (Mich. Ct. App. Jan. 7, 2016) (noting that MCL 408.477(4) "regulates when and under what conditions an employer may make deductions from wages paid in an employee's regular paycheck.").

To the extent that the Pay Discrepancy Acknowledgment Form invokes MCL § 408.477(4), it is clear that it only references a state statute restricting deductions from paychecks, and the "six month" time frame in that statute relates to the employer's legal ability to resort to paycheck-deduction without the employee's written consent. The text of the statute does not impose any overall restriction on the time period during which an overpayment may be collected by other means.

### ii. Analysis

Dr. Bagley argues that the Discrepancy Form by its language establishes that recovery for overpayments is limited to six months, and it includes the additional remedies available to Covenant should an employee fail to notify Covenant of an overpayment. ECF No. 12, PageID.313-14. For that reason, Dr. Bagley contends that this form is a contract, and that there was "consideration" because both Covenant and Dr. Bagley stood to gain or lose something by signing the Form. ECF No. 12, PageID.313. More specifically, Dr. Bagley benefited from not having

16

to repay overpayments beyond six months, and Covenant benefited from not having to pay underpayments beyond six months. *Id.* Covenant counters that the Discrepancy Form limits Covenant's ability to recover overpayments unilaterally to six months but does not otherwise limit recovery in other circumstances because it includes "discretionary" language and is silent regarding litigation. ECF No. 13, PageID.503-505, 507-10.

The Court agrees with Covenant. It is clear that the Form is intended to advise the employee that the employer would follow state law allowing the payroll deduction (without written employee consent) to correct overpayments in the last six months as provided under the Michigan statute. The six-month time frame referenced in the form is the same time period that is "in accordance with the Department of Labor, Wage and Hour Division." The Court does not accept the interpretation of this language as meaning that either the employer, or the employee, contracted to give up their rights either to full compensation for the employee—or full reimbursement for the employer –for either underpaid or overpaid wages. Rather, the Form merely acknowledges that when payroll deductions or additions are being used to correct the problem— they can only go back six months without getting the employee's written consent. While the Discrepancy Form clause stating that any overpayments or underpayments "will be corrected going back for a maximum time period of six (6) months" might seem to indicate that

17

Covenant will never correct overpayments farther back than six months, that language is modified by the immediately following phrase "in accordance with the Department of Labor Wage & Hour Division."

Therefore, returning to the issue of whether the Form is a contract at all, the Court concludes that it is not a contract. It is a statement of the employer's policy regarding payroll deductions and an acknowledgement by the employee that she understands that policy and how it will work. And the policy is merely an indication that the employer will follow state law. Although the Acknowledgement Form also has a line for the "Manager" to sign, that line appears more to be in the nature of a "witness" to the employee's acknowledgement of the policy than a signature block for a contracting party.

The parties had a detailed, signed Employment Agreement: that contract governed their relationship as employee and employer, and clearly set out the obligations of both parties. In contrast, the "Pay Discrepancy Acknowledgement Form" is just what it purports to be—it is not akin to a non-disclosure agreement or some other ancillary contract.

Because the Court finds that the discrepancy form is not a contract, it will not address Plaintiff's argument that Arndt did not have the authority to enter into a contract on behalf of Covenant, and that the Discrepancy Form is not a contract for that reason. ECF No. 13, PageID.500-01. The Discrepancy Form therefore does not prevent Plaintiff from recovering on an unjust enrichment theory.

18

### c. Modification of the Employment Agreement

The Court will briefly address[3] whether the Discrepancy Form modified the Employment Agreement, such that became a part of that contract. If so, Covenant could be barred from bringing an unjust enrichment claim. *See Barber*, 509 N.W.2d at 796. Covenant argues that the Discrepancy Form did not modify Dr. Bagley's original Employment Agreement. ECF No. 13, PageID.503.

The record shows that the Employment Agreement contains an "Entire Agreement" clause, which provides that the Employment Agreement supersedes any other agreement pertaining to the subject matter. ECF No. 11-3, PageID.171. It also provides that "no modification is effective unless in writing and modified by all parties, hereto." *Id.*

Interpreting this provision according to its plain meaning, specifically adhering to the term "hereto," the Employment Agreement cannot be modified in writing unless it is signed by both Dr. Bagley and the CEO of Covenant, because they are the parties who signed the Employment Agreement. Dr. Bagley signed the Employment Agreement, demonstrating her acceptance of the "Entire Agreement" clause. The lack of the CEO's signature on the Discrepancy Form indicates that it cannot be a modification of the Employment Agreement.

---

[3] Although Dr. Bagley initially argues this point, she appears to concede in her Reply Brief, stating that the Discrepancy Form is an "additional agreement" that "does not change Dr. Bagley's underlying employment agreement." ECF No. 16, PageID.845.

As a result, the Court finds that the Discrepancy Form is not incorporated by reference into the Employment Agreement.

## CONCLUSION

For all the reasons set out above, the Court will **GRANT** Plaintiff's Motion for Summary Judgment solely as to liability on Plaintiff's unjust enrichment claim and **DENY** Defendant's Motion for Summary Judgment. The parties take opposing positions regarding how to properly determine the correct figure for damages in this case. ECF No. 14, PageID.744; ECF No. 17, PageID.853-55. Consequently, the Court will schedule a status conference with the parties to discuss the most effective procedure for determining the damage amount.

**IT IS SO ORDERED** this 24th day of August, 2022.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge